166 So.2d 736

**Eugene Davidson KENNEDY et al.**

**v.**

**STATE DEPARTMENT OF PENSIONS AND SECURITY.**

**2 Div. 455, 455A, 455B.**

Supreme Court of Alabama.

June 30, 1964.

Geo. Azar and Capell, Howard, Knabe & Cobbs, Montgomery, for appellants.

Richmond M. Flowers, Atty. Gen., and Mary Lee Stapp, Asst. Atty. Gen., for appellee.

HARWOOD, Justice.

This is a most distressing case in that it involves the custody of three young children of parents who are spastics. Despite the high degree of courage displayed by the parents, the evidence discloses that they are caught in a vicious circle of physical incapacity, emotional strain, and financial distress beyond their capabilities to master. The net result has been a destruction of any reasonable hope for a home environment compatible with the welfare of the three young children. Fate has dealt these parents a miserable hand.

We are here reviewing three decrees of the Circuit Court of Dallas County, Alabama, awarding the custody of the three children of the appellants to the State Department of Pensions and Security of the State of Alabama. These cases came to the Circuit Court by appeal from the Juvenile Court of Dallas County, that court having also awarded the custody of the children to the State Department of Pensions and Security.

The decrees of the Circuit Court are so framed as to permit the State Department of Pensions and Security to place these children for adoption.

In the proceedings below the cases were consolidated for trial, the evidence being identical in each case, and likewise the cases were consolidated for purposes of appeal.

In the Circuit Court, and it appears also to have been done in the Juvenile Court, the cases were submitted by agreement upon affidavits, and the records of Bryce Hospital pertaining to Mrs. Kennedy. The cases therefore come to us without any presumption in favor of the findings and decrees of the lower court. Shubert v. Lacy, 257 Ala. 269, 60 So.2d 442; Redwine v. Jackson, 254 Ala. 564, 49 So.2d 115.

The evidence presented below tends to show that Mr. Kennedy, now approximately 50 years of age, was born a spastic. He was educated in the public schools of Selma and earned a B. S. degree in Commerce and Business Administration from the Uni-

versity of Alabama in 1943. After completing his education he operated an insurance agency in Selma and met with a fair degree of success.

In 1949 he married Anne Elizabeth Stowers who also had been born a spastic. She is now approximately 36 years of age. Three children have been born of this marriage, one in 1955, one in 1956, and the third in 1959. Each of these children is perfectly normal.

The appellants appear to have enjoyed a compatible and normal family relationship until the birth of their second child. The responsibility of caring for two children in view of their physical handicaps brought on stresses and strains with a deterioration of the family life into one of chaos and disorder.

Mrs. Kennedy's behavior became so irrational as to compel her admission to Bryce Hospital. In fact there have been several admissions of Mrs. Kennedy to Bryce Hospital due to her emotional condition. On one admission it was discovered that she was pregnant and she was released in order that her third child might be born in Selma.

Staunch friends, and relatives of the Kennedys have through the years given much of their time and effort toward trying to alleviate the domestic situation of the Kennedys. Among these have been the Rector of the Episcopal Church in Selma.

These people appear to have answered the calls of the Kennedys for help at any time during the day or night. These calls would come during violent disagreements between the Kennedys. The visitors would find the house in complete disorder, with beds unmade, furniture overturned, and Mr. and Mrs. Kennedy in violent arguments which sometimes progressed to the point of physical combat. The testimony of these people who were closely associated with the Kennedys depicts them as being emotionally unstable. Their quarrels and bickerings were continuous, and were generally based on petty and insignificant causes. The children were present during most of these exhibitions.

As a result of Mrs. Kennedy's hospitalizations, Mr. Kennedy was compelled to employ domestic help and to devote a considerable part of his time to the domestic troubles. His business deteriorated to the extent that considerable financial aid had to be furnished the Kennedys from other sources. The Episcopal minister arranged for a contribution of $150 per month from the Episcopal Church. Relatives also helped in the financial situation but the main source of this help from relatives has ceased because of inability of the donors to continue the payments.

In addition to Mrs. Kennedy's emotional disturbances in the past, the evidence clearly tends to indicate that Mr. Kennedy is quite obstinate, strong willed, and rather immature in his approach to his problems.

■ It is of course basic that a court will presume that ordinarily the best interest of the child will be served by giving the custody of the child to the parent. This presumption, however, is not conclusive and the pole star guide in such cases is the welfare of the child. This must be controlling. Smith v. Jones, 275 Ala. 148, 153 So.2d 226; Harris v. Harris, 251 Ala. 687, 689, 39 So.2d 232, and cases cited therein. No better rules for the determination of child custody cases can be found than those set out in the oft quoted case of Striplin v. Ware, 36 Ala. 87. These rules are now so well understood by the Bench and Bar that we will not again quote at length from this opinion other than to set forth the following excerpt:

"* * * that the parental authority will not be interfered with, except in case of gross misconduct, or where, from some other cause, *the parent wants either the capacity or the means for the proper nuture and training of the child.*" (Emphasis ours.)

■ From a careful consideration of the evidence we are clear to the conclusion that

the appellants lack the capacity, particularly the emotional and physical capacity, and the means, to the extent that their continued custody of the children would not be to the best interest and welfare of the children. The record reflects an impossible and hopeless situation so far as the welfare of the children is concerned. Our views in this regard, independently arrived at, are in accord with the conclusions of the lower court, and therefore necessitate an affirmance of the decrees rendered by the lower court.

█ Appellants contend that the action by the lower court in rendering its decrees without the appointment of guardians ad litem for the children is error.

The record shows that the father of the children was represented by counsel in the custody proceedings below and that the father was one of the parties to these proceedings. In such a situation, there is no necessity of appointing guardians ad litem to represent the interest of the children. Power v. Snoddy, 269 Ala. 72, 111 So.2d 14.

█ Appellants further argue that reversal is warranted because the court below failed to appoint a guardian ad litem to represent Mrs. Kennedy. Counsel for the appellants insists that she is mentally competent, but contends that the fact that the Circuit Court in each of its decrees said "that the mother of said child has a serious and perhaps complete mental disability" made necessary the appointment of a guardian ad litem. However, this court is not bound by the wording of these decrees rendered by the Circuit Court.

█ When these proceedings were had, Mrs. Kennedy was represented by competent counsel. The statements made by her and entered into evidence by stipulation were coherent and responsive. If any one was of the opinion that she was a non compos mentis, no such suggestion was made, and her attorney made no claim of that sort. It was never contended that she lacked the mental capacity to be a party to these proceedings, but rather it was, and

still is, insisted that she is a mentally competent individual. Considering the evidence presented to us on this appeal, we cannot find that Mrs. Kennedy was a non compos mentis. A decree against a party for whom no guardian ad litem was appointed will not be disturbed where the evidence is sufficient to support a finding of that party's mental capacity. Snyder v. Woolf, 232 Ala. 87, 166 So. 803.

Counsel for appellants strenuously contend that that portion of the decrees of the lower court reading, "The parents have demonstrated that degree of moral unfitness that renders them in the judgment and opinion of this court, after consideration of the evidence in this cause, to be completely unfit as a custodian of said child" is unsupported by the evidence. We think this contention contains merit and we base our affirmances on the lack of capacity of the parents rather than on any lack of moral fitness. It is therefore directed that the lower court expunge from its decrees that portion above quoted. In all other regards the decrees are affirmed.

Affirmed but remanded with directions.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.