275 So.2d 338

Melanie Anne Lankford BORSDORF

v.

William H. MILLS et al. (Intervenors).

Civ. 105.

Court of Civil Appeals of Alabama.

March 28, 1973.

Simmons, Torbert & Cardwell, Gadsden, for appellees.

James F. Hinton, Gadsden, for appellant.

WRIGHT, Presiding Judge.

This is an appeal from a decree of the Circuit Court of Etowah County, Alabama,

In Equity, resulting from a petition filed by appellant for custody of her minor child. Appellees, William H. Mills and Julia A. Mills, entered the case as intervenors, requesting custody of the child and permission to file adoption proceedings.

The hearing ore tenus revealed the following factual situation.

The child involved, Roger Lee Lankford, Jr. was born November 12, 1968. Its mother, appellant here, was about nineteen years of age at the birth of the child. The child was conceived six months prior to her marriage to Roger Lee Lankford. At the time the child was conceived, appellant was undergoing rehabilitation training at the trade school in Gadsden, Alabama. She had previously undergone psychiatric consultation with psychotherapy recommended.

Prior to July 1970, appellant and her husband separated and he abandoned her and the child. An action for divorce had been filed, when in July 1970, the Etowah County Department of Pensions and Security had received numerous complaints that appellant was neglecting the child in that he was improperly clothed and fed and was being left with various persons. The mother was alleged to be promiscuous.

Investigation revealed that the mother and child were living in a small room at a small hotel where bootlegging was going on. The room was untidy and dirty, with blankets and pillows piled behind a door where the child often slept. It was reported that appellant had offered to "sign over" Roger to several people. At this time the Department offered financial assistance to appellant and boarding home care for the child. Such offer was not accepted.

By verbal order from the court on August 25, 1970, the child was taken into the care of the Department of Pensions and Security. On September 9, 1970, the Department filed a petition seeking temporary custody. After August 25, 1970, appellant lived in various places in Gadsden and worked at various jobs. She went to Dothan, Alabama, apparently early in 1971 and obtained work as a cook at a truck stop. There she met her present husband, Borsdorf, who was night manager, and married him in March 1971. At the time of this marriage appellant had not obtained a divorce. Appellant obtained a divorce from Lankford in May 1971 and remarried Borsdorf in July 1971. By the decree of divorce temporary custody of Roger was given to the Department of Pensions and Security.

In October of 1971, appellant moved with her husband, Borsdorf, to Washington, Iowa, where he is employed and earning approximately $100 per week. Appellant and Borsdorf have a child born April 14, 1972. In February 1972, appellant filed her petition for return of custody of Roger, but hearing thereon was delayed until September 1972 for the birth of her child and other reasons. Appellant and her husband have purchased a home in Iowa, attend church and appear to be establishing themselves in the community.

The child, Roger, was placed in the home of the Mills for foster care in August, 1970 by the Department of Pensions and Security. He was twenty-one months old at that time. He has not seen his mother since that time and has never seen her husband. Roger had been with the Mills and cared for as a member of their family for over two years at the time of the decree, and at this time for two and a half years.

The Mills have two natural children. Mr. Mills is president of a large savings and loan association, and makes some $35,000 per year. Mrs. Mills is a registered nurse but is not working in her profession. By their petition as intervenors they sought permanent custody and permission to proceed with the adoption of Roger.

After hearing, the court granted custody of Roger to the Mills, together with permission to proceed with adoption. Upon

petition to this Court, adoption was stayed until the appeal of appellant could be heard.

■ It is the contention of appellant that as the natural mother of Roger she has prima facie right to his custody. This proposition of law had been long and well established. Jackson v. Farmer, 247 Ala. 298, 24 So.2d 130. However, it is equally well established that such prima facie right of the parent is not an absolute one but must yield to the pole star of all cases involving the custody of children, that is, the welfare of the child. Jackson v. Farmer, supra.

■ That a parent may forfeit the prima facie right to custody of a child by his or her conduct is clear. Jackson v. Farmer, supra. However, we do not consider such to be an issue in this case. Though it appears that the circumstances of the taking of the child from appellant were clear and compelling, it is in evidence that appellant maintained an interest by regular inquiry of the Department of Pensions and Security, and has apparently accomplished rehabilitation and would now be capable of providing a home for the child in Iowa. Her husband has joined her in requesting custody and has expressed a desire to adopt the child. It is evident that appellant is not capable of providing the economic advantages possessed by the Mills. Such is not a controlling factor, though it should be given consideration. Jackson v. Farmer, supra.

■ The appellant and her husband are to be commended in their desire for custody of the child Roger. Appellant is to be commended for her apparent recovery from an unfortunately bad beginning of her adult life. However, we must agree with the court below that the welfare of the child is due paramount consideration over the desires and rights of the parent. The decree of the trial court after hearing the testimony orally is presumed correct, and if supported by the evidence may not be reversed unless clearly wrong and un-

just. Lamar v. Lamar, 263 Ala. 391, 82 So.2d 558.

■ We recognize that there are no specific rules or guidelines for a determination of what is to the best interest and welfare of a child. Such determination must come from the evidence and be weighed in the conscience of the court. Each case must be decided on its own facts.

The court had before it that Roger had been removed from the custody of his mother at an age of less than two years, under conditions which were unpleasant to say the least. If memories of life with the mother were retained they could hardly be favorable. He was taken into a home and given the same comfort, love and affection over a period of two and a half years which was given to the natural children in the home. He has come to know no other mother or father but the Mills. His future under these conditions and with the Mills is certain and bright, assuming adoption is accomplished. Roger no longer knows appellant as his mother, and certainly does not know her husband. He has undergone one traumatic experience. To remove him from the only home and parents he knows and send him to an uncertain future in a distant state with strangers, even though one be a natural parent, could not avoid being another traumatic experience which could be calculated to be extremely damaging.

■■ To tear him from his home and those he knows as his parents and the source of love, safety and security merely to give sanction to a principle of priority of right is unconscionable. The principle of priority of right of a parent to custody is founded upon the premise that because of a blood relation and instinct, such parent will better love and care for a child than one not so related. Such premise may be theoretically correct but practical experience has often proved it incorrect. The bonds of love between parent and child are not dependent upon blood relation and in-

**662**

stinct, but may be forged as strongly in the crucible of day to day living. Out of the actual relationship of parent and child love grows. It is not merely a product of the biological function of conception and giving birth. To give paramount consideration to the principle of parental priority or ownership in custody decisions would often be an anathema to the best interest of the child.

■ Though there was a lack of evidence as to the present unfitness of the appellant to have custody of the child Roger, the evidence and reasonable inferences therefrom that the child knows only the Mills as his parents, loves and is loved by them, and is assured of a future in their home, is more than sufficient to support the decree of the court that his welfare will be best served in their custody. We affirm that decree.

Though the decree of the trial court did not literally grant the permanent custody of Roger Lankford, Jr. to Mr. and Mrs. Mills, it did direct custody to remain in them with permission to file adoption proceedings. We consider it to have been the intent of the court that permanent custody of Roger Lee Langford, Jr. be granted to appellee's William H. Mills and Julia Ann Mills, with permission given to them to file or proceed with an adoption petition presently filed. So that further question as to the intent of the decree will not arise, we hereby amend the court's decree to so read.

■ We would further observe that the statement by the court in its decree that the adoption should be granted by the probate court of Etowah County may be considered as nothing more than an opinion. The circuit court has no authority to direct such adoption. To do so would be of no effect, as it would infringe upon the authority and jurisdiction of the probate court.

Amended and affirmed.

BRADLEY and HOLMES, JJ., concur.