304 So.2d 206

**Loretta Appleton WHITE**

**v.**

**Elmer Clay APPLETON, Jr. and Bob Young.**

**Civ. 417.**

Court of Civil Appeals of Alabama.

Dec. 4, 1974.

Drake, Knowles & Still, University, for appellant.

W. H. Rogers, Moulton, for appellees.

WRIGHT, Presiding Judge.

This is an appeal by the mother of a three-year-old male child from a decree removing custody of her child and granting its custody jointly to its maternal grandparents.

After studying the record, we think it accurate to sum up the situation as follows: Loretta Appleton White left school in the tenth grade. She was married at the age of 15 or 16, became a mother and divorced at 17. The father of her child gave no support to her or her child. She came home to her mother and stepfather, attended business school briefly and took employment as she could find it. Her mother worked. The child was placed in the care of another during the day. Loretta found a job at the Lurleen Wallace Center at Decatur on the night shift. To avoid traveling some 30 miles to work in the middle of the night, she took an apartment near her work. Her child remained with her mother at night and with the paid attendant during the day. Loretta visited with the child on off days and on weekends. When she got off the night shift she moved back to her mother's home. While visiting in Houston, Texas, she learned of a job opportunity and in August, 1973, she accepted a job in Houston. Again she left her child in the home of her mother, where it had been living for some two years.

In November, 1973, it became known to her father, Bob Young, and her mother, Isabelle Parker, that Loretta, a caucasian, was going to marry a negro and take her child to live with her in Houston. Mrs. Parker and Mrs. Young flew to Houston. They found Loretta living with her prospective husband in an apartment complex where other unmarried couples were living together. Mrs. Parker and Mrs. Young immediately returned to Moulton and re-

ported what they had seen and heard. Bob Young was upset and reportedly was determined that the child, Tony, would not be taken by his mother to Houston. With the assistance of the former husband, a petition was filed requesting that custody of Tony be taken from Loretta and given to her mother, Isabelle Parker. An ex parte order granting the petition was entered. Copies of the petition and order were mailed to Loretta in Houston. No summons or date for a hearing accompanied the petition and order. In December, Loretta came to Moulton, took her child and returned to Houston. On January 4, 1974, after motion, default judgment was entered against Loretta. On January 9, upon depositions of Jean Young, Bob Young and Elmer Appleton, judgment was entered granting custody, not to Isabelle Parker, but to Bob Young. Young, armed with the judgment went to Houston, took Tony from Loretta and returned with him to Moulton.

Securing counsel, Loretta filed a motion to set aside the decree and for a rehearing. The motion was granted and hearing set. On the day of the hearing, Bob Young was permitted to intervene and request custody in himself. Mrs. Parker did not seek custody though it was her testimony that it was to the child's best interest to remain in her home.

In the decree, the court made findings of fact. It determined that Tony had spasmodically been cared for by Loretta since the divorce, but had mainly been in the care of Mrs. Parker. It found that Loretta had lived in an area in Houston where unmarried couples lived together and that Loretta proposed to take her child to live in such place, and it was for such reason that the change of custody was requested. The court further found that Loretta had not acted in a mature and responsible manner in caring for her child but had relied upon her mother to care for him. It determined that Mrs. Parker had, in fact, reared the child and provided its necessities. It found that Mrs. Parker had joined in the bringing of the original petition by

Appleton requesting custody be granted to her. Therefore, it found that removal from Lawrence County would not be in the child's best interest, until such time as Loretta could better demonstrate that she was responsible and mature enough to care for the child in the manner it had become accustomed to.

With these findings, the court granted joint custody of Tony to his grandparents, Bob Young and Isabelle Parker.

Loretta assigns error to the finding of fact in the decree that Isabelle Parker joined with Bob Young in bringing the original petition and that Loretta lived in Houston in an apartment complex where unmarried couples lived together.

■ The purpose of the trial court in making such findings of fact and placing them in the decree is not readily apparent. Perhaps the finding of fact that Isabelle Parker joined with Bob Young in bringing the original petition for change of custody was made to support the granting of joint custody to Mrs. Parker. Such finding is not supported by the pleadings, as Mrs. Parker is not a party. However, there is inference from the testimony of Mrs. Parker that she was concerned that Loretta was marrying a negro and intended to take her child to live with her and her husband in Texas. Mrs. Parker testified that she joined Bob Young at the offices of counsel to discuss the impending situation. She further stated that she felt it was to the best interest of the child to remain in her home. It was not necessary that she be a party for custody to be placed in her. Alsbrooks v. Barnes, 251 Ala. 684, 39 So.2d 234.

■ The finding that Loretta lived for a time in an apartment complex where unmarried couples lived together is related as the reason for the petition for change of custody being filed. It is not clear that such was a basis for the change of custody. However, the manner in which she lived at any time is relevant to the question of fitness.

The real issue presented by the appeal is whether a mother should be denied custody of her small child when she has not been shown to be unfit.

 It appears there can be no specific answer to the question. Every case must be determined by its own facts with the primary goal being the best interest and welfare of the child. Harris v. Harris, 251 Ala. 687, 39 So.2d 232. There is little problem in recognizing a parent's paramount right to the custody of minor children when such parent is not shown to be unfit and has fulfilled parental obligations of providing and caring for a child during its life. It is when a parent, though not shown presently to be morally, physically or financially unfit, has failed totally or in some material manner to fulfill the responsibilities of a parent according to reasonable standards that the conflict between so-called parental rights and the best interest of the child arises. Such was the matter for resolution in the case of Borsdorf v. Mills, 49 Ala.App. 658, 275 So.2d 338. The principle of the best interest of the child was determined to outweigh parental rights in that case. It appears to us from the manner in which the decree was written that the trial court reached a similar conclusion in this case. Because of her youth and the evidence that Loretta had for more than two years left the primary care of her child with her mother while she worked, first in Decatur and then in Houston, the court found that Loretta had not exhibited the mature responsibility requisite to the best interest of her child. The court encouraged her to arrange her life and affairs so that she could, at a later time, return to the court with evidence that she had attained maturity and responsibility sufficiently to become custodian of her child.

The conduct of Loretta in first cohabiting with a negro without marriage and subsequently marrying him probably entered into the consideration of the court. Such consideration does not require a conclusion that the decree of the court was founded upon racial prejudice.

 To remove a three-year-old child from the only home it has known, place it in a home far removed with a mother who has spent little time with it and with a strange male and stepfather of a different race, could prove to be a traumatic experience indeed.

 It is often the case that the natural right of a parent to the custody of a minor child must yield to the paramount concern of what is the best interest of the child. Harris v. Harris, *supra,* Borsdorf v. Mills, *supra.*

From the evidence, we cannot find the court palpably wrong in denying custody of Tony to his mother at this time. Therefore, we affirm the decree of the trial court.

Affirmed.

BRADLEY and HOLMES, JJ., concur.