315 So.2d 437

**David James SHERK**

v.

**Mary O'Neal SHERK.**

**Civ. 418.**

Court of Civil Appeals of Alabama.

July 9, 1975.

Gary C. Huckaby, Huntsville, for appellant.

Cloud, Berry, Ables, Blanton & Tatum, Huntsville, for appellee.

BRADLEY, Judge.

The appeal is from a decree denying appellant-father's petition for modification of a prior decree of divorce in which custody of the minor child of the parties was awarded to the appellee-mother.

In the original divorce decree, and as later modified, the mother was awarded custody of the minor child and the father was awarded visitation rights that allowed him to have the child from June 15th to August 15th of each year, for a portion of the Christmas holidays, on Father's Day of each year, and the third weekend of each month.

Appellant, in his petition for modification of the previous decree, suggests that appellee has neglected their son to such an extent that custody should be awarded to him.

It is the rule that a party to a child custody decree who seeks to alter the custody arrangement must allege and prove a material change in the circumstances since the decree awarding custody. *Cox v. Cox*, 48 Ala.App. 574, 266 So.2d 784. It is also the rule that the trial court's findings and conclusions in such cases will not be overturned unless they are plainly and palpably wrong. *Wilson v. Wilson*, 53 Ala. App. 201, 298 So.2d 622, cert. den. 292 Ala. 761, 298 So.2d 627.

The allegations of neglect in appellant's petition charge that appellee has neglected the child by failing to furnish sufficient food and clothing and leaving him alone for long periods of time without supervision; that the child has suffered emotional and mental disturbance as a result of the neglect; and that appellee has attempted to alienate the child's affection for his father by refusing to permit appellant to telephone the child and by refusing to permit the child to visit with his father on certain occasions.

The evidence shows that appellee and the child live in St. Louis, Missouri and the appellant lives in Huntsville, Alabama. The appellee works as a practical nurse for individuals in their homes. Prior to the filing of the petition for modification, appellee's job required that she work about twelve hours a day. Her usual work week was five days; however, on occasion she would have to work on the weekends.

Appellee testified that Wendell, her nine year old son, would get up in the mornings, get ready for school, she would prepare his breakfast, and he would be taken to school, either by herself or another adult. He would eat lunch at school. At three p. m. when school was out, Wendell would usually walk home, depending, however, on the weather. The distance from the school to their house was a few blocks. Many times she would pick him up at school or have someone else pick him up and take him where he was supposed to go.

She testified that she had engaged, over a period of time, several people to care for her son when she was not at home. These people were named, and most of them were deposed and stated that they had at one time or another been engaged to look after the child.

On one occasion the chauffeur at her place of employment was asked to take Wendell htome and the chauffeur did, but left him there alone. A juvenile officer at the police department found the child at home alone and called appellee and told

her that her son was home alone. She immediately made arrangements for someone to stay with him until she could get home.

She stated that she would occasionally leave Wendell alone for short periods of time while she went to the washeteria, but never more than thirty minutes at a time.

She said Wendell was interested in Cub Scouts and she would go with him to sporting events and movies, and they would play badminton and catch-ball. She said Wendell made good grades in school; had a lot of friends who visited in his house and he visited in their houses; and that he was not a disciplinary problem.

Appellee said that she encouraged her son to correspond and communicate with his father and she felt like he and his father had a good relationship. She did say that Wendell had expressed to her a fear of his father.

Appellant testified that from January 1972 to October 1972 he visited his son every third weekend in St. Louis. This required that he drive to St. Louis for these visits. After October 1972, the boy flew to Huntsville for his visitation periods. Appellant also writes to his son almost weekly and calls him on the telephone frequently.

Appellant stated that during the first part of 1973 appellee refused on several occasions to let Wendell go to Huntsville for visitation. Appellee explained that one time Wendell had an important Cub Scout meeting scheduled where he was to receive his Wolf Badge. Appellant was invited to attend but did not. Appellee testified that at other times Wendell was not allowed to fly to Alabama because she had no one responsible to take the child to the airport, check him in, see that he got on the plane, or pick him up when he returned to St. Louis. She also said that it cost $40 for this undertaking and at times she did not have the money. Appellant counters by saying that he engaged a friend of his, a Mr. Wilson, to transport the boy to and from the airport, but appellee would not agree to it. Appellee answered by saying she would not let Wilson transport the child for the reason that he had assisted appellant in taking the boy from school in St. Louis to Alabama without her knowledge or approval.

Appellant said that Wendell told him that his mother left him alone in the house from the time he got out of school until she got home, which would be anywhere from eight to nine p. m. On one occasion appellant called Wendell and found him at home alone. Appellant then called the police department. In response to this call the juvenile officer went to the house and found the boy alone. The appellee was warned not to leave him alone again. Appellee said that she had not left him by himself except for short periods of time since that incident.

Appellant also said that appellee and her boyfriend had carried his son to a nightclub on one occasion where he was left outside in below-freezing weather.

Wendell testified that they got there about eleven p. m. and stayed to about twelve-thirty a. m., that the smoke inside bothered him, and he stayed in an area between doors to the club.

Appellee testified that they went to the club because someone Wendell knew was playing there. They arrived about nine-thirty p. m. and stayed about thirty minutes. While there, they had an alcoholic drink and Wendell had a soft drink

She said the boy spent a good bit of time going in and out of the lounge.

Appellant claimed that appellee required Wendell to sleep in the same room with her and that this was affecting his emotional health.

Appellee said each slept in separate beds, but they would be pulled up close to each other because the child had bad dreams, and also the only air conditioner was in that room.

Wendell was asked if on one occasion his mother drank alcohol and later fell and injured herself, and he said that she did.

Appellee denied this happened. She did admit to having a drink now and then.

Two psychiatrists, one called by the mother and the other by the father, saw the child on different occasions. One stated that the boy needed to be in a household where there was an adult male and that he very much wanted to be with his father. The other psychiatrist said that the child should stay where he is for the time being; that he found anger on the part of Wendell toward both his father and mother for placing him in the position of having to choose between them; that Wendell loved his mother and father and did not want them to divorce each other but to continue to live together; that Wendell had had good mothering and good fathering; that sleeping in the same room with his mother was not harmful to Wendell and probably would not be unless such arrangement was forced on him.

The school principal testified that Wendell was doing well in school.

■ After a careful reading of the record in this case, it becomes quite obvious that for the most part the testimony found there is in dispute. It is axiomatic that where the court tries the case ore tenus, the resolution of disputed testimony is for the court, and its findings and conclusions will not be disturbed unless deemed to be plainly wrong. *Linderman v. Linderman*, 49 Ala.App. 662, 275 So.2d 342. We do not consider the trial court's judgment denying the petition for modification of a prior decree relating to child custody to be plainly wrong; hence we find no error in that aspect of the case.

The next area of argument concerns several continuances granted by the trial court that appellant considers to be an abuse of the court's discretionary power.

The continuances granted over objection apparently were for the purpose of getting appellee to Huntsville so that she might give her testimony in open court and to have the child evaluated by a psychiatrist and that evidence made available to the court.

■ The grant or refusal of a continuance is within the discretion of the trial court, and, for a long period of time, continuances so granted were not reviewable; but the current rule is that such rulings will be revised on appeal only where it is shown that such discretion has been obviously and palpably abused. *Ex parte Driver*, 258 Ala. 233, 62 So.2d 241.

■ In the present case no abuse of that discretion has been shown. It appears that the trial court was attempting to obtain all the available evidence relating to the subject matter so as to enable it to arrive at a proper decision. We find no error here.

■ Lastly, appellant suggests that the trial court committed reversible error when it made certain statements after Wendell was recalled to the stand for additional testimony.

The statements occurred during the following colloquy:

"MR. HUCKABY: Yes, sir. We would like to call Wendell Sherk for just a few brief questions. We would like to suggest that both parties be absent if they would be willing.

"THE COURT: If they want to leave, they can.

"MR. BERRY: Judge, let me ask this in the interest of the welfare of this child only and for no other reason, the little boy already testified almost an hour in this case. He is just a child and I believe in May of this year just turned nine. He is a sensitive child and I know this is a matter that is within the discretion of the trial Judge and certainly within the discretion of the other parties as to whether or not they elect to call a child of this age; but in all consideration to this child and his emotions, I would implore the Court and opposing

counsel not to subject the child to any further testimony and I would in that regard, I would ask that they entertain at least the possibility of a showing as to what they expect the child to testify to and see if we could stipulate to it.

"MR. HUCKABY: Judge, I certainly talked with this child. Before talking to him and before I examined him on the stand, I found him perfectly competent to testify emotionally and in every way and saw no emotional stress in any way. I do not plan to question him in any way that would cause any emotional stress.

"I am sure the Court would not allow it to be done. I think it is crucial and obvious dispute, a crucial dispute on points that are crucial. I don't plan to examine the child on everything he said, I don't think more than four or five questions as to these disputes that are crucial.

"THE COURT: I want you to understand so there won't be any question about an eight year old's testimony being in conflict with an adult's. When it comes to a happening, of course, I give little weight to an eight year old. There are some things an eight year old says that the Court gives great weight to in relation to his parents, but when an eight year old child says something about what happened last year and there is a dispute to that—

"MR. HUCKABY: He is nine.

"THE COURT: Well, nine even. When he testifies to something that happened last year and an adult disputes that, I would say that the child's testimony would be given little weight. Now, you can call the child if you like."

Appellant apparently is suggesting that the trial court prejudged Wendell's testimony by announcing in advance of that testimony that if it concerned a happening a year or more ago, he gave little weight to it, especially if it were contradicted by the testimony of an adult. Should the testimony, however, concern the parents, great weight would be given thereto.

It is to be noted that appellant makes no contention that the child was erroneously found by the court to be competent to testify; he only says that the court prejudged the weight that would be given to the boy's testimony. Appellant candidly admits that he has been unable to find any cases on the issue, and we have found none.

The cases we have read concerning the burden of a trial court hearing testimony ore tenus hold that the court has the responsibility of weighing the testimony of each witness; and it appears that the trial court in the instant case was merely informing the parties and their counsel how he would approach the assessment of the particular testimony then being heard by the court. The responsibility for such assessment being solely the court's, no harm could befall appellant from a preassessment statement of the weight to be given a certain type of testimony. We, therefore, do not consider that the trial court erred to the prejudice of appellant.

Notwithstanding our determination that the alleged error is harmless, we would point out that no objection or exception was interposed to the trial court's remarks at the time they were made; and, where this is not done, nothing is presented for review by this court. *Lane v. Lee,* 50 Ala.App. 75, 277 So.2d 352.

No reversible error having been presented, the judgment of the trial court is affirmed.

Affirmed.

WRIGHT, P. J., and HOLMES, J., concur.