This is a child custody case.
The Department of Pensions and Security (hereinafter Department) petitioned the district court for temporary custody of a minor child. The district court awarded temporary custody to the Department. Thereafter, the natural parents petitioned the circuit court for a writ of habeas corpus and for a determination of custody of the child. Ultimately, after hearings ore tenus, the trial court awarded custody to the father. However, the custody awarded to the father was a restricted one. The Department appeals and we affirm.
The dispositive issue on appeal is whether the trial court abused its discretion in its award of custody. As indicated earlier, we find it did not and affirm.
We deem it necessary to set out in some detail the pertinent facts surrounding this appeal.
This proceeding began with an ex parte hearing on June 9, 1977, in the District Court of Dale County at which time the court granted the Department temporary custody of the minor child pending a hearing. Upon the hearing on June 10, the district judge awarded temporary custody of the child to the Department. After the parents petitioned the circuit court for a writ of habeas corpus, another hearing was held on November 22, 1977, and again temporary custody was awarded the Department. The parents timely moved the circuit court for a rehearing, and after granting the motion, the court on May 18, 1978, held a second ore tenus hearing which resulted in an order granting custody of the minor child to the father.
The record of the proceedings viewed with the attendant presumption reveals the following: Harry and Sung Robles were the parents of two infant female children. *Page 41 
There was testimony that on June 1, 1977, Rita, their three month old child died under circumstances which were suggestive of the possibility of child abuse and further opinion testimony that the child had been abused. The physical condition of the infant, as indicated by an autopsy, showed that the child had two fractures of the skull, and fourteen broken ribs. The evidence indicates that these injuries occurred some months prior to the infant's death (possibly at birth); that they were not the cause of death; and that of the three physicians who examined the deceased child, none could identify the cause of death.
The physicians who examined the deceased child found no evidence that external force was applied to the child's body,i.e., there were no bruises or discolorations customarily present when external force causes the breaking of bones. There was evidence that since Mrs. Robles is a Korean National, she customarily carried the child on her back as she went about her household duties at which time the child's body was tightly wrapped in a stable position on her back. There is additional testimony that the deceased child's fifteen month old sister had, on past occasions, hit the infant with objects and had pulled her off furniture onto the floor on more than one occasion.
Shortly after the death of the child, the FBI and Army Criminal Investigation Division investigated the circumstances surrounding the death of the child because Mr. Robles is a noncommissioned officer in the United States Army. Additionally, a federal grand jury investigated the circumstances surrounding the death of Rita. No charges were preferred against either parent.
At the hearings, the parents introduced testimony from a number of witnesses which indicates that the children were well cared for, healthy and happy. These witnesses, particularly Chaplain Thomason, stated that they had not observed any evidence of physical abuse of the children. In addition, the next door neighbors of the parents testified that they had not observed evidence of physical abuse and had not heard the children cry or scream as if they were being physically harmed. It was their opinion that Mrs. Robles was a good mother.
At the final hearing, the plaintiffs, by way of deposition, introduced the testimony of a Dr. Lopez, a highly qualified psychiatrist. Dr. Lopez testified that he extensively examined the Robles and that the usual social maladjustments normally present in parents who abuse children were conspicuously absent in this instance. Furthermore, it was his opinion that neither parent had harmed the deceased child. Finally, Dr. Lopez stated that because Mrs. Robles is a small female, that fact coupled with the fact that the deceased child at birth weighed eight pounds could account for the existence of the fractures.
Most significantly, our examination of the record indicates that there is no testimony, expert or otherwise, which shows that the surviving daughter was abused or neglected. In fact, from all that appears, the condition of this child has, since her separation from her parents, physically deteriorated.
With the above before the learned trial judge the following order regarding custody was entered:
 1. that the care, custody and control of Jenny Lee Robles is hereby awarded to Harry J. Robles under the care and supervision of the Department of Pensions and Security of the State of Alabama on the following conditions:
 a. that Mr. and Mrs. Robles submit themselves to a psychiatrist and psychological examination and obtain treatment of any mental or emotional problems they may have.
 b. that the Robles attend any child abuse clinics if advised to do so by the Department of Pensions and Security.
 c. that the Robles meet and abide by the directives of the Department of Pensions and Security and permit the Department to visit, inspect and supervise their home situation. *Page 42 
 d. that the Robles advise the Department of Pensions and Security of their whereabouts at all times.
 e. that the Robles enroll in any courses or seminars which may be available dealing with the responsibilities of parents and child care if so directed to do so by the Department of Pensions and Security.
 f. that the Robles refrain from removing the child from the State of Alabama without the permission of the Court.
On appeal, the Department contends that the trial court's order is plainly and palpably erroneous and contrary to the great weight of the evidence. Specifically, it is argued that because there is evidence that the deceased infant was possibly abused prior to her death, the parents are unfit. Therefore, it is argued that the well being of the surviving child is endangered if the parents are given custody. For the reasons set forth below, we cannot say in this instance that the learned trial judge erred, particularly in view of the nature of the restrictive custody order.
The legal principles which are dispositive of the instant dispute are aptly set forth by our Judge Bradley in Ely v.Casteel, Ala.Civ.App., 341 So.2d 730, 734 (1977), where it is said:
 Where the dispute over custody of a child is between the child's natural parent and a party who is not the child's natural parent, the natural parent has a prima facie right to the child's custody. However, the right is not absolute but is subject to the equally well settled rule that the best interests and welfare of the child are controlling in child custody cases. Borsdorf v. Mills, 49 Ala. App. 658, 275 So.2d 338 (1973).
 Ordinarily there is no conflict between these two principles, since it is presumed to be in the child's best interests to place custody in the parent. Kennedy v. State Department of Pensions and Security, 277 Ala. 5, 166 So.2d 736 (1964); Smith v. Jones, 275 Ala. 148, 153 So.2d 226 (1963). However, when the parent's fitness for custody is challenged, the principle of the best interests of the child outweighs parental rights. White v. Appleton, 53 Ala. App. 702, 304 So.2d 206 (1974); Borsdorf v. Mills, supra. To remove custody from the natural parent in such a case, there must be clear and convincing evidence that it would be against the best interests of the child to remain with the natural parent. Caine v. Caine, 51 Ala. App. 607, 288 So.2d 147 (1973); Borsdorf v. Mills, supra.
In view of the facts set forth above, we cannot say there is "clear and convincing evidence that it would be against the best interests of the child to remain with the natural parent." This is particularly so given the nature of the learned judge's well drafted restrictive decree. Where, as here, the case is heard ore tenus and there is legal evidence to support the decree, this court will not substitute its judgment for that of the trial court. Ely, supra.
We would be remiss in failing to note that this is a most unusual case involving numerous perplexing facts. There appears to be no solid conclusion that can be reached regarding the death of the child. Under such circumstances, the trial court entered a reasonable and, hopefully, adequate solution.
The Department, as we perceive its argument, additionally contends that the trial court erred in reversing its original custody order after an ore tenus rehearing because there was no new evidence presented by the parents at the rehearing which sustains the trial court's award of custody to the parent. We do not agree.
Initially, we observe that the question of child custody is never res judicata. Quintanilla v. George, Ala.Civ.App.,340 So.2d 804, cert. denied, Ex parte Quintanilla, 340 So.2d 808
(Ala. 1976). Notwithstanding this principle, under ARCP 59, a new trial may be granted a party on all or part of the issues in an action tried without a jury. Upon such a motion, the court can take additional testimony, amend its findings of fact or conclusions of law or make *Page 43 
new findings and conclusions, and direct entry of a new judgment. ARCP 59 (a). In the instant case, the parents timely moved for a rehearing and, contrary to the Department's contention, presented ample evidence as indicated above which supports the trial court's final decree.
The Department's final contention is that the trial court committed reversible error in considering an offer of judgment which was stricken by the court. The Department argues that the court further considered the document when the parents attempted to testify to its contents, although such testimony was foreclosed by proper objection.
We find no merit in this contention because to require reversal, the party claiming error has the burden of showing error on the record and resulting injury. Kroger Co. v.Puckett, Ala.Civ.App., 351 So.2d 582 (1977). In this instance, the force of the Department's argument loses much if not all of its impact because the court below struck the offer of judgment from the proceedings and furthermore, properly sustained objections to oral testimony which alluded to its contents. The trial court's conscious effort to abide by the rules of evidence cannot, as the Department contends, amount to error. For this court to say that the trial court in fact considered the offer of judgment would be more conjecture and speculation on the part of this court.
For the reasons noted above, the decree of the court below is affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.