328 So.2d 295

**STATE of Alabama, DEPARTMENT OF PENSIONS AND SECURITY**

v.

**Vicky Lynn HALL.**

**In the Matter of Charlie Newton HALL.**

**Civ. 747.**

Court of Civil Appeals of Alabama.

March 3, 1976.

William J. Baxley, Atty. Gen., Mary Lee Stapp, Asst. Atty. Gen., and Jamie L. Pettigrew, Asst. Atty. Gen., for appellant.

HOLMES, Judge.

This is a child custody case. The Circuit Court of Madison County entered an order dismissing the petition of the Madison County Department of Pensions and Security. The department's petition requested permanent custody of Charlie Newton Hall on the grounds of dependency and neglect. The trial court's order granted custody of the child to his mother. The Department of Pensions and Security appeals from that order.

The issue before this court is whether the trial court erred to reversal in refusing to grant the department permanent custody of Charlie Newton Hall, and in giving the mother custody of the child. We find the trial court did so err, and reverse and remand the cause.

Although the appellee-mother has not favored this court with a brief, the record reveals the following pertinent facts:

The child, Charlie Newton Hall, was born in January of 1973. His mother, Vicky Hall, was arrested by the Huntsville Police Department for public drunkenness in August of 1973. The mother at that time was eighteen years old.

The child was brought to the Department of Pensions and Security a short time thereafter by his maternal grandmother. On August 27, 1973, the Family Court of Madison County issued an order granting temporary custody of the child to the department.

In May of 1974, the department commenced proceedings for the permanent custody of Charlie Newton Hall on the grounds of dependency and neglect.

At these proceedings, the officer who arrested Vicky Hall testified that he received a complaint of a disturbance at the trailer where she lived with her child, mother, and brother. Upon his arrival, he found Vicky Hall in the bedroom with a male. Another male was elsewhere in the trailer. The child was lying in his own excrement on a couch. He further testified that Vicky Hall was intoxicated and acted in a belligerent manner and refused to take care of her child despite several requests to do so.

An employee of the Department of Pensions and Security testified that when the child was brought to the department, he was very dirty and abnormally unresponsive. He was very pale and the back of his head was flattened. He did not know how to eat baby food, but could only drink milk.

The medical doctor who examined the child corroborated the above testimony as to his condition. He further testified that the child had what appeared to be multiple infected insect bites on his arms and legs, and was suffering from iron deficiency anemia, a condition usually caused by a diet of milk rather than solid foods. Additionally, he testified that the child's flattened head was caused by the child having been placed on his back and left there for inordinate amounts of time.

Further testimony was that the child after a period of care was able to sit up and crawl about, learned to eat baby food, and that his condition was greatly improved.

A child welfare worker with the Department of Pensions and Security who was working with Vicky Hall testified that the mother moved to Nashville, Tennessee, in December of 1973. This worker and a Tennessee welfare worker both testified in substance that Vicky Hall was very difficult to locate and apparently did not maintain a stable residence. Vicky Hall told the Tennessee worker that there had been no reason for her child's removal from her, and that she had made no changes since that removal because it was unnecessary to make changes.

Further testimony was that Vicky Hall had made false statements to the department concerning her living arrangements. The Alabama worker also testified that Vicky Hall vacillated a great deal concerning where she planned to live, and that she constantly contradicted herself in matters pertinent to her being given custody of her child.

The manager of a Red Lobster Restaurant in Nashville, Tennessee, testified that in June of 1974 he terminated Vicky Hall's employment as a waitress with that entity. This was done due to her insubordination and the fact that despite repeated warnings she came to work dirty and wore dirty uniforms. On one occasion she threw a bowl of salad and used profanity. She also told the manager on two occasions that her mother had died so that she could be excused from work. She had held this job for approximately six months. A prior job had lasted for some three weeks.

Further testimony was given by one of the males who was present at the trailer when Vicky Hall was arrested for public drunkenness, as noted earlier. He testified that she had requested him to perjure himself as to the damaging circumstances of that occurrence. His testimony of what transpired that night was in sharp variance to Vicky Hall's in several respects.

Vicky Hall stood alone in contradicting various unflattering aspects of the above testimony. Her testimony can be adequately summarized by stating that she took issue with the version of her arrest described above, alleged that she still was employed by the Red Lobster, and sought to explain away her various seeming untruths as being justified by certain of her mother's problems.

At the conclusion of the proceedings, the learned trial judge, as noted earlier, denied

the department's petition for custody and granted custody to the mother, Vicky Hall. Upon petition of the department, this court stayed the order of the trial court pending disposition of this appeal.

We initially note the well-established principle of law that the controlling consideration in child custody matters is the best interest of the child. See 12 Ala. Dig. *Infants* ⊚19.2(2) and cases cited thereunder. It thus follows that while the parent has a prima facie right to the custody of a child, this right is not absolute and must yield to the superior criterion of the child's welfare. *Borsdorf v. Mills,* 49 Ala. App. 658, 275 So.2d 338; *Kennedy v. State Dept. of Pensions and Security,* 277 Ala. 5, 166 So.2d 736.

Applying these guidelines to the case before us, we are compelled to conclude that the learned trial judge committed reversible error by his awarding custody of this minor child to its mother.

The evidence is undisputed that Charlie Newton Hall had been seriously neglected when he was turned over to the Department of Pensions and Security. Vicky Hall, the mother responsible for Charlie Newton Hall's condition, now seeks to be granted permanent custody of the child. However, speaking frankly, this court can find no evidence indicating that Vicky Hall is presently fit to properly discharge her responsibilities as a parent.

The evidence as revealed by the record has already been set forth. That evidence shows, in sum, a very unstable young woman of questionable ethics and at best dubious veracity. She has grossly neglected her child in the past. There is no evidence that she has rehabilitated herself since that time. Her present life style when taken together with her past conduct dictates that the best interest of this small child would not be served by remanding him to the custody of one so poorly qualified to care and provide for him.

It is appropriate at this point to note the following statement found in 59 Am.Jur.2d *Parent and Child* § 39, as cited to us in brief by counsel for the appellant:

"Generally, a parent who has been deprived of custody of his child on account of his misconduct is entitled to restoration of custody on a showing that he has reformed and is presently a suitable custodian. *However, perhaps because such reformations have often proved unstable, the courts are sometimes reluctant to restore custody, especially where it appears that the child's welfare would be best served by leaving it where it is. In any event, the child will not be restored to the parent where the latter's reformation consists of an uncertain promise or occurs only a short time before he seeks to regain the custody of the child."* [Emphasis supplied]

Here, we have only the uncorroborated and often contradicted assertions of Vicky Hall, standing against an entire record showing her lack of fitness to be given custody of this child.

While the trial court's findings in custody cases are favored, the reviewing court will reverse the trial court if those findings are plainly and palpably wrong. *Lawson v. Jennings,* 52 Ala.App. 582, 296 So.2d 176; *Modling v. Modling,* 45 Ala. App. 493, 232 So.2d 673. Such is the case here. The learned trial court's final order is clearly contrary to the vast preponderance of the evidence in this cause.

The case is accordingly reversed and remanded to the trial court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED WITH INSTRUCTIONS.

WRIGHT, P. J., and BRADLEY, J., concur.