This is a parental rights termination case.
Colby Allen Rivera, born September 13, 1979, is the illegitimate son of Rhonda Gayle Beard Rivera. In August 1980 the child was placed in the temporary custody of the Madison County Department of Pensions and Security.
On August 19, 1980 DPS and the mother entered into an agreement whereby the child would be returned to her physical custody in six months provided she met certain conditions. The mother abided by the terms of the agreement and on February 13, 1981 the court ordered the child to be returned to her, with DPS to retain legal custody. Under the decree the mother was required to adequately care for the child, maintain a good employment record and suitable living and child care arrangements, to refrain from narcotics use, and to cooperate with and keep in touch with DPS or else she would lose custody of the child.
In June 1981 the mother violated the terms of the order and in November 1981 was arrested for the possession and sale of drugs and was later found guilty. DPS regained physical custody on December 10, 1981 and placed the child in a foster home.
In April 1983 DPS petitioned for permanent custody of the child in order to place him for adoption and to terminate all legal rights of the parents. The mother filed a counterpetition asking that physical custody be returned to her. A guardian ad litem was appointed to represent the interests of the child.
An ore tenus hearing was held on June 17, 1983. The court found Colby to be a "dependent child" of the state and entered an order terminating all parental rights and granting custody of the child to DPS with authorization to place him for adoption. From this decree the mother appeals.
The mother argues that the trial court erred in finding her an "unfit" custodian and in terminating her parental rights, and that DPS failed to exhaust all reasonable means of placing the child with family members or relatives before placing him for adoption.
 "Where the dispute over custody of a child is between the child's natural parent *Page 860 
and a party who is not the child's natural parent, the natural parent has a prima facie right to the child's custody. However, the right is not absolute but is subject to the equally well settled rule that the best interests and welfare of the child are controlling in child custody cases. Borsdorf v. Mills, 49 Ala. App. 658, 275 So.2d 338 (1973)."
Ely v. Casteel, 341 So.2d 730 (Ala.Civ.App. 1977).
In a termination of parental rights case, the ore tenus rule applies. This means that the judgment of the trial court is given every favorable presumption and will not be overturned unless it is palpably wrong. Hudgins v. State, 418 So.2d 913
(Ala.Civ.App. 1982).
Before a trial court can terminate a parent's right to custody of its child, there must be clear and convincing evidence before the court that it would not be in the child's best interests to be in the natural parent's custody. Vinson v.AGAPE of Central Alabama, Inc., 416 So.2d 1075 (Ala.Civ.App. 1982).
The evidence shows that the mother is twenty-seven years old, has been married and divorced, and has a nine year old daughter from that marriage. The child lives with the father.
The evidence further shows that Colby is three years of age and has spent at least half his life in foster care. The child's father is unknown. The mother believes it could be one of two men with whom she was having sexual relations at the time she became pregnant.
It is without dispute that the mother had a severe drug problem. She had been taking drugs since 1974 and was smoking marijuana during the time she was pregnant with Colby. She had also used various other type drugs. She supported herself during her pregnancy with Colby by selling dope for her brother-in-law. In August 1980 there was an incident at a motel where the mother, her sister, Colby, and her sister's twin daughters were in a room with two men and two women using drugs. When the social worker arrived, she saw all three children lying on the floor; one wrapped in a towel, one in a pillow case, and one wearing a diaper. Colby was eleven months old at the time and the other children were just a few months old. The milk in the baby bottles had soured and there were no clean diapers and no food in the room. All of the children's diapers were dirty. The mother was sitting on the floor, with her head bent over, hair in her face. She could not even say her name when asked. When she tried to move around, she staggered and fell. In late 1981 the mother was arrested on four counts of possession and sale of dilaudid, a controlled substance. She pleaded guilty to two of the charges, was convicted, served a portion of her thirty month sentence in jail, then some on the work release program, and is on probation until 1984.
The mother insists that her drug problems are behind her and that she has not used drugs since before her arrest. It was disclosed that she had completed a program recommended by the Huntsville-Madison County Mental Health Center and a job training program at the vocational rehabilitation service center. Her probation officer testified that she is one of his better clients, is punctual, keeps him informed, and is doing well under supervision.
Although it appears that the mother has her drug problem under control at the moment, there is other evidence to support the trial court's finding that the best interests of the child would not be served by placing its custody with the mother.
In 1976 the mother was arrested for petty larceny and served a suspended sentence. And, as found by the trial court, the mother has never been able to hold a job for any length of time. She recently lost her job at Owens-Corning, where she was making $7.37 an hour, because of her repeated lateness to work. She also moves frequently, always living with relatives and friends, and has never lived in any one place long enough to establish a real home. A few times she was living at a motel. *Page 861 
In addition, the mother ignored the provisions of the court order and agreement she entered into with DPS by not keeping DPS informed of her whereabouts and not maintaining regular contact with them. She actively concealed her son from DPS for several months for fear they would take him away from her. On one occasion, right after custody was returned to her, Colby had a cigarette burn the size of a dime underneath his eye. The mother said it was an accident. In March 1981 Colby was admitted to the hospital for severe dehydration and diarrhea. When the mother was in the caseworker's office on March 24, 1981, the child had a mark like a "W" on his chin, which was red and inflamed. The mother was not sure how Colby got the injury, but thought he might have gotten it by running into a hot water heater.
Although it appears that the mother loves her son, Colby, she has contributed nothing to his support while he has been in DPS custody.
The evidence supports the trial court's finding that the mother's parental rights be terminated and that custody of the child be awarded to DPS. See State Department of Pensions Security v. Hall, 57 Ala. App. 290, 328 So.2d 295 (Ala.Civ.App. 1976); 59 Am.Jur.2d Parent and Child § 39 (1971).
The mother also contends that DPS did not exhaust all reasonable means of placing Colby's custody with relatives rather than DPS and ultimately with strangers. We disagree.
DPS looked first to the child's natural parents for placement and next to his relatives. However, the evidence shows that DPS was unable to find a suitable relative to take custody of the child. Neither of the alleged fathers has shown any real interest in Colby or even claims to be his parent. One of the alleged fathers is married, has three children, and previously served time for a drug violation. Neither the mother's aunt nor grandmother wants Colby, and although one of her sisters expressed an interest in providing for Colby, she does not have the financial resources to adequately care for him. Another sister is not a suitable custodian. Still another sister has expressed a desire to have Colby's custody, but she and her husband have been married only a short time, have a new baby, and are on a government subsidized milk program and food stamps. She has a six year old son by a previous marriage who is being raised by her ex-husband. Her husband's job status is uncertain at this time.
It thus appears that all the relatives are either too old, do not want Colby, or are unable to care for him properly. And it would not be in the child's best interests to return him to his mother's custody. Therefore, the trial court properly terminated the mother's parental rights and directed DPS to find the child a suitable home.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.