This is a termination of parental rights case.
In March 1977 the Tallapoosa County Department of Pensions and Security (DPS) received a child abuse and neglect report concerning Juanita Melton, the five-month-old daughter of Cecilia and Harold Melton. The report indicated that for three days prior thereto, Mr. Melton had been walking up and down the road with Juanita, attempting to give her away to passersby.[1]
Upon investigation, it was found that Juanita, who at that time was living with Mr. and Mrs. Lyn Barrett, was in dreadful physical condition. She suffered from severe cradle cap, and diaper rash that consisted of open sores on her entire pelvic area. Her complexion was white and pasty and she was extremely constipated. She was irritable, did not know day from night and did not know how to play. The Barretts stated that the child had been filthy when she came to them. Further investigation revealed that the Meltons' home, where the child had been living, was filthy and that there was no food in the house other than baby food which had been donated by friends.
On March 10, 1977, DPS received a pickup order and obtained custody of Juanita at Mrs. Melton's attorney's office, where Mrs. Melton had gone to sign consent forms placing the child for private adoption. The following day a hearing was held at which DPS was awarded temporary custody. Juanita was placed in foster care.
Subsequently, Mrs. Melton divorced her husband, found steady employment, made new friends and became involved in church activities. DPS, apparently believing that she had made great strides toward improving her life, began allowing Mrs. Melton short visits with Juanita. Eventually, physical and thereafter legal custody was returned to Mrs. Melton, for whom DPS continued to provide counseling and services.
In February 1979, DPS received another abuse report indicating that Juanita was suffering from three to four-inch bruises on her buttocks and that her potty training had regressed to the point that she was wetting herself several times a day. Investigation revealed the child to be withdrawn, unable to interact with others and quiet, often sitting alone in her room. After receiving this report, DPS began further counseling of Mrs. Melton. This counseling was terminated when Mrs. Melton moved from Tallapoosa to Montgomery County.
On February 8, 1981, Mrs. Melton was arrested by the Montgomery City Police Department and charged, along with her boyfriend, Robert Burkett, with abusing Juanita. Both admitted to beating the child with a belt, a board and their hands, leaving excessive bruises, one atop the other, *Page 394 
resulting in a solid bruise from the middle of the child's back to the back of her knees. Mrs. Melton pled guilty to the charges and was sentenced to six months in Bryce Hospital. DPS was again given temporary custody of Juanita.
Upon release from Bryce, Mrs. Melton returned to Montgomery, returned to work and continued to receive counseling in parenting and assertiveness training.[2] In December 1981 Mrs. Melton regained physical custody of Juanita. Legal custody was returned to her in March 1982.
In July 1982 Montgomery County DPS received another abuse report indicating mistreatment of Juanita. The Montgomery Police Department received a similar report on July 12, 1982. That same day DPS, acting pursuant to a pickup order, removed the child from Mrs. Melton's home. Subsequent investigation revealed that the child had again been beaten, resulting in bruising of her arms and legs and severe bruising and lacerations of her buttocks. The investigation showed that these beatings were inflicted by Burkett, whom Mrs. Melton had been ordered by the court not to see, and that they occurred with the knowledge, if not the consent, of Mrs. Melton. Thereafter, Burkett was charged with assault and Mrs. Melton was returned to jail for having violated her probation. She remained in jail for approximately one year. Juanita was again placed in foster care.
Temporary custody was returned to DPS on August 11, 1982, and permanent custody was awarded said agency on October 27, 1983. On November 10, 1983, Mrs. Melton appealed from the October 27 order, alleging that there was insufficient evidence to support the trial court's termination of her parental rights.
In addition to the foregoing evidence, expert testimony at trial indicated that Mrs. Melton is a passive-dependent personality type who is incapable of profiting from her experiences and who tends to act without considering the consequences of her actions. Such personalities, the record shows, may frequently find themselves in recurring difficult situations. The record also shows that such persons might find it impossible to protect their own child from abuse by others and that, in Mrs. Melton's case, if Juanita were returned to her custody, the potential for further abuse would always be present.
Although Mrs. Melton is currently undergoing treatment for this disorder, all testimony indicates that treatment of as long as three years may be necessary before she could be safely reunited with Juanita. Expert testimony also shows that Juanita suffers deep emotional scars as a result of the abuse visited upon her. The child is extremely afraid of Robert Burkett and does not believe that Mrs. Melton can protect her from him. Such fears cause the child to experience bad dreams, culminating in bed-wetting whenever she is faced with the possibility of being reunited with her natural mother. All testimony indicates that the child has developed a strong attachment to her present foster parents, and that her primary need is for immediate and continued love and emotional stability. Such needs, the record shows, would not be satisfied should the child remain in foster care pending her mother's rehabilitation; and the record is clear that visitations from Mrs. Melton would only be harmful to Juanita. In short, all evidence establishes that Juanita's emotional wellbeing will be best served by immediate permanent adoption into a stable home environment.
In child custody matters, the welfare and best interest of the child is always the controlling consideration. Lovell v.Department of Pensions and Security, 356 So.2d 188
(Ala.Civ.App. 1978). Where, as here, a child custody matter is heard ore tenus, the trial court's determination will be given every favorable presumption and will not be disturbed unless palpably wrong. Fitzgerald v. Jeter, 428 So.2d 84 (Ala.Civ.App. 1983). If there is any evidence *Page 395 
to support the trial court's judgment, we must affirm, absent palpable error. Fitzgerald, supra.
Although this court normally finds severing the natural bonds between a parent and child to be difficult, we must do so where the best interest of the child requires. There is clear and convincing evidence that Juanita is greatly in need of an immediate, stable home environment. The mother has not, during the lifetime of this abused and tormented child, provided her an environment other than one of nightmares.
In spite of the protestations of the mother and supportive witnesses that she has undertaken a course of self improvement, the fact remains that she has entered into such apparently sincere self-improvement in the past. Each time the child has been returned to her custody only to again suffer abuse. Considering that history, we consider the trial court correctly determined that opportunity for further abuse of Juanita should be ended through the severance of parental rights of the mother. We commend and affirm that determination.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.
[1] Testimony reveals that in 1976 Mr. Melton suffered a severe brain injury which left him erratic, unstable and immature, causing him to make all sorts of threats and engage in bizarre behavior.
[2] Evidence indicates that such counseling is proper treatment for persons, like Mrs. Melton, with passive dependent personalities.