This is an appeal of a judgment which terminated the parental rights of J.C., the putative father. The Association for Guidance, Aid, Placement and Empathy (AGAPE) for Central Alabama, with the minor mother's consent and concurrence, filed a petition for termination of the mother's and J.C.'s parental rights in order that the child could be placed for adoption. After an order was entered finding the child dependent and terminating the parental rights, J.C. appealed, contending, inter alia, 1) that he was denied due process of law because of lack of personal service of the summons and petition herein; 2) that the trial court abused its discretion in denying his attorney's request for continuance; and 3) that there was insufficient evidence to terminate his parental rights.
The record reveals that a hearing was held November 7, 1990, pursuant to an order issued on October 8, 1990. Separate attorneys were appointed to represent the interests of the mother and J.C. When the case was called for trial, all parties and their attorneys, except for J.C., were present. Upon the court's inquiry as to the whereabouts of J.C., the following colloquy occurred:
 "MR. FREEMAN (Counsel for J.C.): Yes, Your Honor. I spoke with him one day late last week and it's my understanding, Your Honor, that this morning he's having car trouble. And it's also my understanding in talking with Miss Thompson that he was not served with notice of this hearing. But in any event, he denies the Petition filed and wishes to *Page 304 
contest the termination of his parental rights.
 "THE COURT: He apparently was aware of the hearing, is that true?
 "MR. FREEMAN: Well, I have not had any face to face contact with [J.C.] but apparently, Your Honor, I would say apparently he is aware of the hearing but is not here through circumstances beyond his control, car trouble. I would ask that the Court continue this case for a [sic], and request that the Court Order the Crenshaw Department of Human Resources to conduct a home evaluation as far as [J.C.]'s home."
Upon further inquiry by the court, the mother replied that she had learned of the hearing date from J.C., and J.C. had indicated to her that he would be present. The court delayed the hearing approximately two hours and reconvened at approximately 10:20 A.M., whereupon the following colloquy occurred:
 "THE COURT: Okay. It is now 10:20, almost two hours since the case was supposed to have begun and have we heard anything further from [J.C.]?
 "MR. FREEMAN: No, Your Honor, just through Mr. Davis, who is a person who I presume is a friend of [J.C.]'s, who has a local number here. I spoke with Mr. Davis about fifteen minutes ago, and he had heard from [J.C.] about ten minutes before that and he was still on the side of the road.
 "THE COURT: Okay. We are going to go ahead and proceed.
 "MR. FREEMAN: Your Honor, for the record I would like to object to the fact that [J.C.] has never been served with a copy of the Petition in this case.
"THE COURT: All right, sir.
 "MR. FREEMAN: And we believe to go forward with the hearing, due to that procedural defect, is a denial of his rights of due process.
 "THE COURT: Okay. The Court is finding, however, that [J.C.] has actual knowledge of the hearing and that's evidenced by his attempts to be here, or alleged attempts to be here. So, we will proceed. . . ."
At the conclusion of the evidence, the court entered its order terminating the parental rights of both parents. J.C.'s motion for new trial was denied; hence, this appeal.
We are confronted at the outset with the due process rights of an unwed putative father, who, prior to this hearing, has taken no steps to either recognize, support, or participate in the care, rearing, or maintenance of this child. In fact, his only admission of paternity is his affidavit filed in support of his motion for new trial, even though the mother testified that she notified him of his paternity during her pregnancy. While the record is silent as to the service of the summons and the petition, it is clear from the testimony of both J.C.'s counsel and the mother that J.C. knew of the hearing and was allegedly en route thereof, and was represented by counsel.
J.C. argues that pursuant to Ala. Code 1975, § 12-15-53, it is mandatory that he be served with a summons and a copy of the petition, alleging the dependency of the child in question, and allowing him actual notice and an opportunity to be present and offer evidence. While the record is silent regarding the service in this matter, Rule 13, Alabama Rules of Juvenile Procedure, states that "[t]he inability to serve any party shall not deprive the court of jurisdiction to proceed." Further, Rule 27, A.R.J.P., allows that a party, who has not been served pursuant to Rule 13, "may for good cause shown, petition the court in writing for a modification of any order, judgment or decree of the court." (Emphasis added.) The state has a compelling interest in speedily identifying those persons willing to assume a parental role over illegitimate children. These rules are tailored to achieve that purpose and strict compliance of service is not required, where, as here, the evidence reflects that J.C. had actual notice of the hearing, was represented by counsel, but was not present. See Rule 13, A.R.J.P.
Reviewing J.C.'s post judgment affidavit as a motion to modify pursuant to Rule 27, A.R.J.P., it is clear that he had actual knowledge of the hearing. In this affidavit, *Page 305 
he alleged that he was attempting to appear at the hearing when his car broke down some fifteen miles from the site of the hearing. The record reveals that he informed a friend that he had car trouble, but that he failed to make other adequate transportation arrangements. There was no evidence before the trial court of any further attempts made by J.C. to attend the hearing, although there was a two-hour delay. Although J.C. did not attend the hearing, he was fully represented by counsel, and that counsel had every opportunity to present evidence on behalf of J.C.'s case. See Thornton v. Thornton, 519 So.2d 960
(Ala.Civ.App. 1987); see also Sanders v. Kunkle,533 So.2d 259 (Ala.Civ.App. 1988); and Pignolet v. State Department ofPensions Security, 489 So.2d 588 (Ala.Civ.App. 1986). The United States Supreme Court has offered some guidance concerning the parental rights of putative fathers, and has limited those rights in regard to notice and hearing. See Lehrv. Robertson, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614
(1983). Based on the foregoing, this court finds that there has been no violation of J.C.'s statutory or constitutional due process rights, nor did the court abuse its discretion in refusing to continue the case further.
Next, we consider whether there is clear and convincing evidence which supports the trial court's decision to terminate J.C.'s parental rights. It is well-settled that a parent has a prima facie right to the custody of his/her child; nevertheless, the overriding consideration is always the best interests of the child. McCullough v. Alabama Department ofPensions Security, 500 So.2d 1093 (Ala.Civ.App. 1986);Brown v. Alabama Department of Pensions Security,473 So.2d 533 (Ala.Civ.App. 1985). In determining the child's best interests, the court must consider whether a party to a custody proceeding is physically, financially, and mentally able to care for a child. Matter of Von Goyt, 461 So.2d 821
(Ala.Civ.App. 1984).
Parental rights can be terminated if the court finds from clear and convincing evidence that the parents of the child are unwilling or unable to discharge their responsibilities to and for the child. Ala. Code 1975, § 26-18-7(a). The facts in this case reflect that J.C. has demonstrated little or no interest in this child since learning of the mother's pregnancy in January of 1990. No support or assistance was provided by J.C. either during the mother's pregnancy or since the birth of the child. He has never visited the child, although he did see the child by coincidence on one occasion. J.C. offered no alternative plan for the care and raising of the child, nor has he made any arrangements for a stable home or the necessary financial resources required in raising this child. Although J.C. does not deny paternity of this child, he has taken no action to legitimate the child. See M.F.K v. State Departmentof Human Resources, 571 So.2d 317 (Ala.Civ.App. 1990).
Ala. Code 1975, § 26-18-7(a), lists several factors the court may consider in terminating parental rights; however, it is expressed that this list is neither exhaustive nor limiting. Further, Ala. Code 1975, § 26-18-7(b), provides that where, as here, the child is not in the physical custody of its parent, the court shall additionally consider, inter alia, the failure by the parent to maintain regular visitation with the child, the parent's failure to maintain consistent contact or communication with the child, and the lack of effort by the parent to adjust his circumstances to meet the needs of the child. See McCullough, supra. Except for a limited period of time immediately after this birth, this child has remained in the custody of AGAPE.
In child custody cases where the evidence was presented to the trial court ore tenus, the judgment of the trial court is presumed correct and will not be set aside unless it is shown to be plainly and palpably wrong. Brown, supra. If there is any evidence to support the trial court's judgment, this court must affirm, absent palpable error. Melton v. State Department ofPensions Security, 448 So.2d 392 (Ala.Civ.App. 1984).
We find the trial court's decision is supported by clear and convincing evidence, *Page 306 
and therefore, we affirm the judgment of the trial court.
AFFIRMED.
ROBERTSON, PJ., and RUSSELL, J., concur.