Rel: March 14, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

_____

## CL-2024-0838, CL-2024-0839, CL-2024-0840, CL-2024-0841, and CL-2024-0842

_____

## J.B.

## v.

## J.R. and A.R.

## Appeals from Morgan Juvenile Court
## (JU-21-12.01, JU-21-12.02, JU-21-12.03, JU-21-12.04, and JU-21-12.05)

MOORE, Presiding Judge.

These appeals arise out of five judgments entered by the Morgan Juvenile Court ("the juvenile court") following this court's decision in C.S. v. Morgan County Department of Human Resources, [Ms. CL-2022-1246,

CL-2024-0838, CL-2024-0839, CL-2024-0840, CL-2024-0841, and CL-2024-0842

Jan. 31, 2024] ___ So. 3d ___ (Ala. Civ. App.), cert. quashed, as to appeal number CL-2022-1288, [Ms. SC-2024-0095, Sept. 13, 2024] ___ So 3d ___ (Ala. 2024).  We dismiss appeal numbers CL-2024-0839 (case number JU-21-12.02), CL-2024-0840 (case number JU-21-12.03), CL-2024-0841 (case number CL-21-12.04), and CL-2024-0842 (case number JU-21-12.05) as arising from void judgments.  In appeal number CL-2024-0838, we conclude that the juvenile court did not comply with our mandate in C.S., and we, therefore, reverse the judgment entered in case number JU-21-12.01.

## Background

A.J.S. ("the child") was born on June 30, 2020, out of a non-marital relationship between C.S. ("the mother") and J.B. ("the father").  The mother misled the father as to his paternity of the child and began raising the child on her own.  On January 22, 2021, the Morgan County Department of Human Resources ("DHR") commenced a dependency action relating to the child (case number JU-21-12.01).  Through the dependency proceedings, DHR obtained legal custody of the child and placed the child in foster care with J.R. and A.R. ("the foster parents").

2

CL-2024-0838, CL-2024-0839, CL-2024-0840, CL-2024-0841, and CL-2024-0842

The mother subsequently filed a petition to regain custody of the child or to obtain unsupervised visitation with the child (case number JU-21-12.02). In late September 2021, the mother informed the father of his probable paternity of the child. In January 2022, after obtaining genetic-test results confirming his paternity of the child, the father intervened in the dependency action and petitioned the juvenile court to award him custody of the child. The foster parents responded by filing a petition to obtain custody of the child (case number JU-21-12.03), a petition to terminate the parental rights of the mother and of the father to the child (case number JU-21-12.04), and a petition to adopt the child (case number JU-21-12.05).

The juvenile court consolidated the five actions relating to the child and entered separate, but identical, judgments in each action. In pertinent part, those judgments found the child to be dependent as to the mother and the father, awarded custody of the child to the foster parents, awarded the father visitation with the child, subject to automatic suspension if he allowed the child to have contact with the mother, and denied the foster parents' petitions to terminate the parental rights of

3

the mother and of the father and to adopt the child. On appeal, this court, in pertinent part, affirmed the judgment entered in case number JU-21-12.02, which was at issue in the mother's appeal number CL-2022-1247; dismissed appeal number CL-2022-1277, which was the foster parents' appeal from the judgment entered in case number JU-21-12.01; affirmed the judgments entered in case numbers JU-21-12.04 and JU-21-12.05, which were at issue in the foster parents' appeal numbers CL-2022-1279 and CL-2022-1280, respectively; dismissed appeal number CL-2022-1289, which was the father's appeal from the judgment entered in case number JU-21-12.03; and reversed, in part, the judgment entered in case number JU-21-12.01, which was at issue in the father's appeal number CL-2022-1288 and remanded that case with instructions to the juvenile court "to vacate the parts of the judgments finding the child dependent as to the father," C.S., ___ So. 3d at ___, "to vacate the portions of the judgments denying the father's [custody] petition and to enter new judgments awarding the father custody of the child and implementing a transition plan that serves the best interests of the child," id. at ___, and "to vacate the provision automatically suspending the father's visitation

4

upon his allowing unapproved contact between the child and the mother and to take such other actions regarding the visitation between the father and the child as are consistent with this opinion," id. at ___.

On September 19, 2024, the juvenile court entered separate, but identical, judgments in the five actions relating to the child. In those judgments, the juvenile court vacated the portions of the judgments that had been reversed by this court and awarded the father custody of the child. The juvenile court implemented a transition plan calling for the child to be placed in the physical custody of the father for gradually increasing periods between September 20, 2024, and November 3, 2024, at which point the father would assume full-time physical custody of the child. The juvenile court's judgment further awarded to the foster parents the right to visit with the child on "the first weekend of each month (the first Friday of the month) from 6:00 p.m. on Friday to Monday at 8:00 a.m. and each third Thursday of the month from 6:00 p.m. until 8:00 a.m. the following day," with the visitation to begin on December 6, 2024. (Bold typeface omitted.)

CL-2024-0838, CL-2024-0839, CL-2024-0840, CL-2024-0841, and CL-2024-0842

On October 1, 2024, the father filed a postjudgment motion in all five cases requesting that the juvenile court vacate the visitation award to the foster parents. On October 10, 2023, the juvenile court entered an order in the cases denying the postjudgment motion, stating, in pertinent part:

"That portion of the motion to vacate the visitation awarded to [the foster parents] (one weekend per month and the third Thursday night of each month) is denied. The proceeding that was appealed is a dependency matter. The Court of Civil Appeals, in the reversal of the [juvenile] court, mandated that the [juvenile] court vacate that portion of the [juvenile court's] order granting custody to [the foster parents] and placing custody in the father. The [juvenile] court has entered that mandated order transferring custody to the father as ordered by the Court of Civil Appeals. The reversal of one attempted disposition of the child at one particular point in time, does not dictate to the juvenile court when it would be in the child's best interest, absent that particular disposition, to close the dependency proceeding or to make some other disposition of the child. ([W.T.M. v. S.P.,] 899 So. 2d 842 [(Ala. Civ. App. 2003)]). The case cited is exactly on point. The juvenile court placed custody with the foster parent instead of the father (or other relative resources) and awarded visitation to the father. In the matter at ha[n]d, the juvenile court ruling was exactly the same. The juvenile court has complied completely with the order of the Court of Civil Appeals. The court is granted the right to make any other order as the court i[n] its discretion shall deem to be for the welfare and best interest of the child. ([§] 12-15-314[(a)](4)[,] Alabama Code [1975]). The juvenile court is not attempting to thwart the jurisdiction of the Court of Civil Appeals or fail

6

> to comply with the order. The Court is simply trying to allow a child to adjust to the very drastic changes in her life that are about to occur. The visitation can always be terminated if it proves to no longer be in the best interest of the child."

On October 23, 2024, the father appealed the judgments insofar as they awarded visitation to the foster parents.[1]

<u>Issue</u>

In his postjudgment motion, the father argued to the juvenile court that it had violated this court's mandate by awarding visitation to the foster parents. On appeal, the father reiterates that argument, but he also contends that the juvenile court lacked the statutory authority to award visitation to the foster parents and that it violated the due-process rights of the father by awarding visitation without notice to him and an opportunity to be heard. We can consider only the first issue; the latter two issues were not presented to the trial court and, thus, were not preserved for appellate review. See <u>J.M.L. v. Tuscaloosa Cnty. Dep't of</u>

---

[1] The father identified DHR and the mother as appellees, but the foster parents are the only adverse parties against whom the appeals have been taken, so we have restyled the appeals to designate only the foster parents as appellees. <u>See</u> Rule 3(c), Ala. R. App. P.

CL-2024-0838, CL-2024-0839, CL-2024-0840, CL-2024-0841, and CL-2024-0842

Hum. Res., [Ms. CL-2023-0765, Apr. 26, 2024] ___ So. 3d ___ (Ala. Civ. App. 2024).

## Discussion

Before proceeding to the merits, we first address our jurisdiction over the appeals that arise from the judgments entered by the juvenile court following the issuance of our opinion in C.S. in the five actions. Those actions include a dependency action commenced by DHR (case number JU-21-12.01), a custody action commenced by the mother (case number JU-21-12.02), a custody action commenced by the foster parents (case number JU-21-12.03), a termination-of-parental-rights action commenced by the foster parents (case number JU-21-12.04), and an adoption action commenced by the foster parents (case number JU-21-12.05). In C.S., supra, we reversed, in part, only the judgment entered against the father in case number JU-21-12.01.[2]

---

[2]We recognize that we remanded the case for the juvenile court to amend the "judgments," C.S., ___ So. 3d at ___, plural, but, in context, we were referring to the judgment finding the child dependent as to the father, the judgment denying the father's petition for custody, and the judgment regulating the visitation between the father and the child, all of which pertained to case number JU-21-12.01.

8

CL-2024-0838, CL-2024-0839, CL-2024-0840, CL-2024-0841, and CL-2024-0842

Following our reversal of the judgment in case number JU-21-12.01, the juvenile court entered amended judgments in all five actions, and the father has appealed from all five judgments. Because case number JU-21-12.03 was a void proceeding, the amended judgment entered in that case is void. C.S., supra. The amended judgments entered in case numbers JU-21-12.02, JU-21-12.04, and JU-21-12.05 are void because the unqualified affirmance by this court of the final judgments entered in those cases terminated the jurisdiction of the juvenile court to take any action to modify those judgments. See Werborn v. Pinney, 76 Ala. 291 (1884); Waterhouse v. Iowa Dist. Ct. for Linn Cnty., 593 N.W.2d 141, 142 (Iowa 1999). Thus, we dismiss appeal numbers CL-2024-0839, CL-2024-0840, CL-2024-0841, and CL-2024-0842, which arise from the void judgments entered in those actions, see Vann v. Cook, 989 So. 2d 556, 559 (Ala. Civ. App. 2008) (holding that a void judgment will not support an appeal and the court must dismiss an appeal from a void judgment), all of which have been finally concluded.

Regarding the appeal from the amended judgment entered in case number JU-21-12.01, we conclude that the juvenile court failed to follow

9

our mandate. "It is well settled that, after remand, the trial court should comply strictly with the mandate of the appellate court by entering and implementing the appropriate judgment." Auerbach v. Parker, 558 So. 2d 900, 902 (Ala. 1989).

> "'It is the duty of the trial court, on remand, to comply strictly with the mandate of the appellate court according to its true intent and meaning, as determined by the directions given by the reviewing court. ... The appellate court's decision is final as to all matters before it, becomes the law of the case, and must be executed according to the mandate ....'"

Ex parte Alabama Power Co., 431 So. 2d 151, 155 (Ala. 1983) (quoting 5 Am. Jur. 2d, Appeal and Error § 991 (1962)).

In C.S., supra, we determined that the record did not contain sufficient evidence to sustain the finding that the child was dependent as to the father, and we held that, as a fit natural parent, the father, not the foster parents, should have been awarded custody of the child. In that context, we ordered the juvenile court to award the father custody of the child. Realizing that DHR had unduly interfered in the bonding process between the child and the father, this court also ordered the juvenile court to gradually transition the child into the custody of the father.

CL-2024-0838, CL-2024-0839, CL-2024-0840, CL-2024-0841, and CL-2024-0842

On remand, the juvenile court partially complied with our mandate by vacating the award of custody to the foster parents and awarding custody of the child to the father. The judgment entered on remand in case number JU-21-12.01 provides, in pertinent part:

> "The full legal and physical custody of the child is hereby vested with the father .... The father shall have the rights, duties, privileges and obligations to make all decisions regarding the health, education and welfare of the child. All custody is hereby divested from the former custodians, [the foster parents]."

The juvenile court further partially complied with our mandate by implementing a transition schedule providing for the child to primarily reside with the foster parents, while gradually spending more time with the father, until November 3, 2024, when, the juvenile court ordered, the child "shall be placed in the physical custody of the father and the transition period shall be complete." However, the juvenile court further included a visitation provision awarding the foster parents the right to visit with the child overnight and unsupervised on the first weekend and the third Thursday of each month commencing on December 6, 2024, after the transition period had ended.

11

That visitation provision violated our mandate. In common understanding, and in the context of this case, at the end of the transition period, the custody of the child was to be fully vested in the father. See Ex parte Marshall Cnty. Dep't of Hum. Res., 234 So. 3d 519, 521 (Ala. Civ. App. 2016) ("The child's custody is to be vested in the father at the completion of the transitional period ...."). The juvenile court clearly understood that this court had directed it to award the father full custody of the child, but it apparently determined that an award of visitation to the foster parents did not conflict with the award of full custody to the father. However, "visitation rights are a part of custody determinations." Denney v. Forbus, 656 So. 2d 1205, 1206 (Ala. Civ. App. 1995). An award of full custody to a fit natural parent necessarily includes the right to control visitation between the child and third parties. See Ex parte E.R.G., 73 So. 3d 634 (Ala. 2011) (holding that a fit natural parent has a fundamental right to control visitation between his child and third parties that a court cannot override based on its own determination that visitation would serve the best interests of the child). This court intended that, upon completion of the transition period, the father would have the

12

right, as the legal custodian and natural parent of the child, to determine whether visitation with the foster parents would be in the best interest of the child. This court did not intend that the juvenile court could award visitation to the foster parents over the objection of the father, which would be antithetical to the award of full custody.

In addition to depriving the father of his rights as a legal custodian, the award of visitation to the foster parents also curtails his physical custody of the child. "Overnight and other unsupervised 'visitation' removes children from the presence and control of their parents and gives complete control and authority over the child for a period of time to another adult, essentially effecting a temporary or 'partial custody.'" See R.S.C. v. J.B.C., 812 So. 2d 361, 369 (Ala. Civ. App. 2001) (plurality opinion). The visitation award removes the child from the physical custody of the father on the first weekend and every third Thursday of every month and places the child into the custody of the foster parents. Under that arrangement, the child will not transition completely into the custody of the father as we intended and ordered.

13

The juvenile court asserted that it could award visitation to the foster parents pursuant to W.T.M. v. S.P., 889 So. 2d 572 (Ala. Civ. App. 2003) (plurality opinion), and Ala. Code 1975, § 12-15-314(a) ("If a child is found to be dependent, the juvenile court may make any of the following orders of disposition to protect the welfare of the child: ... (4) Make any other order as the juvenile court in its discretion shall deem to be for the welfare and best interests of the child."). We disagree. In W.T.M., this court had remanded a dependency case to the Jefferson Juvenile Court to make a final custodial disposition of the child, without specifying the terms of the final custodial disposition. "[W]here [an appellate] court gives no precise directions as to how a case is to proceed as to a certain matter on remand, the lower court may proceed in any manner that is not inconsistent with the [appellate] court's opinion." Durbin v. Durbin, 818 So. 2d 409, 411 (Ala. Civ. App. 2001). The Jefferson Juvenile Court awarded custody of the child at issue in W.T.M. to relatives, but also awarded visitation to the former foster parent and the former foster siblings. Judge Murdock, the author of the main opinion in W.T.M., opined that the visitation award did not violate the

14

vague remand instructions of this court and that the juvenile court could use its broad power under the predecessor statute to § 12-15-314(a)(4) to award visitation if it determined that that visitation would be in the best interests of the dependent child.

In this case, however, this court determined that the child was not dependent as to the father and directed that the father -- the fit natural parent of the child, not a mere relative of the child -- be awarded full custody of the child following a transition period. Unlike in W.T.M., in C.S., this court gave precise instructions to the juvenile court regarding the final custodial disposition of the child. Our decision left the foster parents without any custodial rights to the child and, if anything, to be consistent with our remand instructions, the juvenile court could only have dismissed the foster parents as parties to the dependency action. The opinion did not leave it to the discretion of the juvenile court to make any other custodial disposition that it deemed to be in the best interests of the child. The juvenile court could not rely on W.T.M. or § 12-15-314(a)(4) to render a judgment awarding visitation to the foster parents in contravention of our remand instructions. On remand, our opinion

15

CL-2024-0838, CL-2024-0839, CL-2024-0840, CL-2024-0841, and CL-2024-0842

was the law of the case and "'[n]o judgment other than that directed or permitted by the reviewing court may be entered.'" Ex parte Alabama Power Co., 431 So. 2d at 155 (quoting 5 Am. Jur. 2d, Appeal and Error § 991 (1962)).

Finally, in C.S., because we intended for the juvenile court to transition the child into his custody, we did not order the father to be dismissed as a party to the dependency action at that time. Now that the child has transitioned into his custody, the father should no longer be a party to the dependency action because, as we determined in C.S., the child is not dependent as to the father. Therefore, we now order the juvenile court to dismiss the father as a party in case number JU-21-12.01 and to relinquish any jurisdiction over him pursuant to our holding in that case.

Conclusion

For the foregoing reasons, we dismiss appeal number CL-2024-0839, CL-2024-0840, CL-2024-0841, and CL-2024-0842. In appeal number CL-2024-0838, we hold that the juvenile court violated this court's mandate in C.S. We therefore reverse the judgment entered in

16

CL-2024-0838, CL-2024-0839, CL-2024-0840, CL-2024-0841, and CL-2024-0842

case number JU-21-12.01 insofar it awarded visitation rights to the foster parents. We remand that case with further instructions for the juvenile court to dismiss the foster parents and the father as parties to the dependency action.

CL-2024-0838 -- REVERSED AND REMANDED WITH INSTRUCTIONS.

CL-2024-0839 -- APPEAL DISMISSED.

CL-2024-0840 -- APPEAL DISMISSED.

CL-2024-0841 -- APPEAL DISMISSED.

CL-2024-0842 -- APPEAL DISMISSED.

Edwards, Hanson, Fridy, and Lewis, JJ., concur.